HARVEY O. WOEBBEKING and MARY ELLEN WOEBBEKING, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Woebbeking v. Commissioner
Docket Nos. 5956-77, 10196-78.
United States Tax Court
T.C. Memo 1980-259; 1980 Tax Ct. Memo LEXIS 319; 40 T.C.M. (CCH) 693; T.C.M. (RIA) 80259; July 21, 1980, Filed Harvey O. Woebbeking, pro se. Joseph R. Peters and Nelson Shafer, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes together with additions to tax under sections 6651(a)(1) [1]/ and 6653(a): Addition to Tax
Addition to Tax
Year
Deficiency
(sec. 6651(a)(1))
(sec. 6653(a))
1973
$ 240.13
$0
$0
1974
1,142.98
0
0
1975
3,185.91
318.59
159.29
1976
2,800.35
0
140.04
The issues presented for decision are *320 as follows: 1. Whether a trust created by petitioners to which they purportedly conveyed their lifetime services is effective to relieve petitioners of Federal income taxes on their earnings in 1973, 1974, 1975, and 1976; 2. Whether petitioners are liable for 1975 for the delinquency penalty imposed by section 6651(a)(1); and 3. Whether any part of the underpayments for 1975 and 1976 were due to negligence or intentional disregard of rules and regulations within the meaning of section 6653(a). FINDINGS OF FACT Petitioners Harvey O. Woebbeking (Harvey) and Mary Ellen Woebbeking (Mary Ellen) were legal residents of Wisconsin when they filed their petitioners. They filed Federal income tax returns for 1973, 1974, 1975, and 1976, with the Internal Revenue Service Center, Kansas City, Missouri. On August 22, 1973, petitioners as grantors created the Woebbeking Organization (A Trust). Each of them signed an agreement containing the following provision: * * * [As] of THIS date, I hereby * * * and IRREVOCABLY convey by and through this conveying agreement, the exclusive use of my lifetime services to said Trust, including ALL my earned remuneration and ALL ancillary *321 benefits and bonuses of whatsoever nature from ALL and ANY outside source which may be generated by said services, the same from THIS date forth being solely controlled, directed and owned in fee simple by said Trust, WITH THE EXCEPTION OF any benefits accruing to THIS CONVEYER from Social Security and/or any personally developed retirement benefits resulting from my direct remuneration as a Self employed Person, e.g., Trust Manager of said Trust, and any applicable distributions to Unit Holders of said Trust; and, FURTHER EXCLUDING any "sick" benefits that may accrue to me from any outside source of employment, OR any recoverable moneys resulting from suits at law of whatsoever nature, OR insurance benefits resulting from sickness or accident,; and/or any death benefits, retirement benefits, pension benefits, profit sharing benefits that MAY ACCRUE TO ME from any and all outside sources of employment, with the understanding that when any or all applicable contributions made to the above mentioned "Funds" are, in the normal course of events, chargeable to THIS Grantor - Creator - Conveyer as earned and taxable income to ME, such moneys will be reported on my individual Form 1040, and *322 said sums will NOT be included in THIS TRUST's reportable Gross Income as reportable on its Form 1041, * * *. The trust agreement contained other implementing provisions. Petitioners established a bank account and authorized themselves, as "Trust Manager" and "Trust Secretary," to draw checks on the trust's bank account-- whether said checks are payable to cash, bearer or the order of the Trust or to any third party or to the order of any signing Trustee or Manager or Secretary of THIS TRUST in either individual or official capacity. During 1973 through 1976, Harvey worked for Wisconsin Gasket Company, and his employer was not informed of the creation of the trust. Harvey endorsed his paychecks and deposited them into the trust bank account. He also worked for the Department of the Army as a cook, and the Department of the Army was not aware of the existence of the trust. Mary Ellen worked for the Wisconsin Electric Power Company and her employer was not advised of the creation of the trust. She assigned her wages to the trust. Petitioners' Federal income tax return for 1975 was received by the Internal Revenue Service on July 28, 1976. OPINION Petitioners earned *323 their wages and assigned them to the trust which they created. They are not relieved of Federal income taxes by this anticipatory assignment of income. . Petitioners' case is similar to that of large numbers of other taxpayers who have assigned their wages to trusts and have been held, nonetheless, to be taxable on them. See, e.g., (Mar. 31, 1980), on appeal (10th Cir., June 2, 1980); (Mar. 31, 1980); ; , on appeal (8th Cir. Oct. 15, 1979); , affd. per order (7th Cir., June 7, 1978), cert. denied . Regardless of the effect of petitioners' income assignments under State law, those arrangements do not relieve petitioners of Federal income tax on their earnings. Section 6651(a)(1) calls for the imposition of a penalty of 5 percent for each month an income tax is delinquent, not to exceed 25 percent of the amount *324 of the tax, unless the failure to file the return on time is due to reasonable cause and not due to willful neglect. The burden rests with petitioners to show that the penalty does not apply to them for 1975, the year their calendar year return was filed on July 28, 1976. They have shown no reasonable cause for the delinquency. Harvey testified he could not remember why the return was late. Imposition of the penalty, therefore, is sustained. Section 6653(a) provides that if any part of any underpayment of income taxes is due to negligence or intentional disregard of rules and regulations, a penalty of 5 percent of the underpayment is to be applied. Petitioners have offered no evidence to show they were not negligent or did not intentionally disregard the rules in claiming the alleged tax benefits of the family trust. We are left with the firm belief that the trust was created only in an attempt to avoid income taxes. We think a step as drastic as purporting to assign their future earnings to a trust was one in which a reasonable, prudent person would have consulted a competent tax advisor. No such consultation was shown in this case. We must sustain the determined additions *325 to tax for 1975 and 1976. To reflect the foregoing, Decisions will be entered under Rule 155. Footnotes
1. /↩ All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted.